UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| WILLIAM PETAWAY, )<br>    Plaintiff, )<br>)<br>v. )<br>)<br>JOSEPH DINITTO, et al., )<br>    Defendants. )<br>_____) | C. A. No. 11-047-M |

## MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Judge.

Before the Court are several motions in a 42 U.S.C. § 1983 action that *pro se* prisoner William Petaway brought against Defendants Joseph DiNitto, Ashbel T. Wall, and Michael Fine after Mr. Petaway was tested for Human Immunodeficiency Virus (HIV) upon his transfer to the Adult Correctional Institutions ("ACI") in Cranston, Rhode Island from a facility in Connecticut. Defendants filed a Motion to Dismiss; in the same motion, Dr. Fine alternatively moved for summary judgment. (ECF No. 41.) Mr. Petaway filed a Motion for Summary Judgment (ECF No. 33) and a Motion to Declare Rhode Island General Laws § 42-56-37(a) unconstitutional as it is applied to him.[1] (ECF No. 36.) Mr. Petaway also filed a Motion to Strike Defendants' affidavit of Gordon Bouchard. (ECF No. 50.)[2] For the reasons set forth below, the Court grants Defendants' Motion to Dismiss and denies both of Mr. Petaway's motions.

---

[1] The Court notified the R.I. Attorney General pursuant to Local Rule 24(b) that a state statute's constitutionality was challenged. (ECF No. 17.)
[2] Because the Court neither considered nor relied on the affidavit, Mr. Petaway's Motion to Strike (ECF No. 50) is GRANTED.

## I. FACTS

Mr. Petaway was an inmate of the Connecticut Department of Corrections when he was transferred to the ACI in Rhode Island pursuant to the New England Interstate Corrections Compact ("the Compact"), R.I. Gen. Laws § 13-11-2. (ECF No. 1 ¶ 1.) As part of the transfer, ACI medical staff gave Mr. Petaway a medical intake exam that included an HIV test. *Id.* ¶¶ 3-4. Rhode Island state law requires HIV testing for all sentenced inmates at the ACI. R.I. Gen. Laws § 42-56-37(a).[3] According to Mr. Petaway, he informed the ACI staff prior to the test that he retained his alleged right to refuse HIV testing as a Connecticut inmate under Connecticut law, but he was told that HIV testing was mandatory under Rhode Island law. (ECF No. 1 ¶¶ 7-13.) Mr. Petaway further alleges that Mr. DiNitto, Mr. Wall, and Dr. Fine knew that transferred Connecticut inmates retain their right to refuse HIV testing, but nevertheless enforced the ACI policy and Rhode Island state law requiring HIV testing for inmates. (ECF No. 1 ¶¶ 22-26.) Mr. Petaway alleges that he did not consent to the HIV testing and that if Defendants claim that he did consent, his consent was involuntary. *Id.* ¶¶ 15-16. After the compelled HIV test, Mr. Petaway was "angry, in serious shock, embarrassed, confused, and in pain." *Id.* ¶ 17.

Mr. Petaway filed suit under 42 U.S.C. § 1983, alleging that the HIV test violated his rights under Connecticut Department of Corrections Administrative Directive 8.11, section 8(a), Connecticut General Statutes section 19a-582(a), the Fourth and Fourteenth Amendments of the United States Constitution, and the New England Interstate Corrections Compact. *Id.* ¶ 33(A)-

---

[3] "Every person who is committed to the adult correctional institutions to answer for any criminal offense, after conviction, is required to be tested for human immunodeficiency virus (HIV). No consent for this test is required from the person being tested, nor is this test subject to waiver. In addition, periodic testing for HIV, including testing at the time of release and when deemed appropriate by a physician, is required. No consent on the part of the person being tested is required." R.I. Gen. Laws § 42-56-37(a).

2

(D).[4] Defendants dispute these claims, arguing that the Compact language Mr. Petaway relies on does not preserve his Connecticut legal rights, but confirms only that Connecticut retains control over him. Defendants further argue that the Compact has been interpreted to determine that the receiving state's rules apply to the transferred prisoner. (ECF No. 41 at 10-11.) Moreover, Defendants claim that Mr. Petaway's allegations against the individual Defendants fail to state claims because Dr. Fine, Mr. Wall and Mr. DiNitto were not personally involved in the HIV testing at issue in the Complaint. *Id.* at 5-7.

## III. STANDARD OF REVIEW

In reviewing a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court accepts as true the well-pleaded factual allegations of the complaint and draws all reasonable inferences in favor of the plaintiff. *Cook v. Gates*, 528 F.3d 42, 48 (1st Cir. 2008); *McCloskey v. Mueller*, 446 F.3d 262, 266 (1st Cir. 2006). To withstand "a motion to dismiss, a complaint must allege 'a plausible entitlement to relief.'" *ACA Fin. Guar. Corp. v. Advest, Inc.*, 512 F.3d 46, 58 (1st Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1967-69 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678-87 (2009). "[A] plaintiff . . . is . . . required to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir. 1988).

Moreover, the "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing

---

[4] In his Complaint, Mr. Petaway references the "New England Interstate Compact," rather than the New England Interstate Corrections Compact. *See e.g., id.* ¶¶ 1, 11, 22-24, 33(D). The Court treats this as an oversight, as it is clear to the Court and no party disputes that Mr. Petaway is referring to the New England Interstate Corrections Compact. *See* R.I. Gen. Laws. § 13-11-2.

3

*Twombly*, 550 U.S. at 555). A complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). While accepting the facts as alleged in the complaint as true, "this deferential standard does not force [a] court to swallow the plaintiff's invective hook, line, and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited." *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996).

Because Mr. Petaway is *pro se*, the Court views his pleadings liberally. The Court is "solicitous of the obstacles that pro se litigants face, and while such litigants are not exempt from procedural rules, [the Court] hold[s] pro se pleadings to less demanding standards than those drafted by lawyers and endeavor[s], within reasonable limits, to guard against the loss of pro se claims due to technical defects." *Dutil v. Murphy*, 550 F.3d 154, 158-59 (1st Cir. 2008) (citing *Boivin v. Black*, 225 F.3d 36, 43 (1st Cir. 2000)).

### III. LEGAL ANALYSIS

Mr. Petaway's 42 U.S.C. § 1983 claims are chiefly governed by the interplay of the Compact, the Connecticut statute, the Connecticut Department of Corrections Administrative Directives governing HIV testing in Connecticut prisons, the Rhode Island statute, and the ACI policy promulgated in line with the Rhode Island statute governing the same. The Compact provides for the efficient and orderly transfer of prisoners from one state to another "to fully utilize and improve their institutional facilities and provide adequate programs for the confinement, treatment and rehabilitation of various types of offenders." R.I. Gen Laws § 13-11-2, Art. I. The portion of the Compact at issue in this case states: "[t]he fact of confinement in a receiving state shall not deprive any inmate so confined of any *legal rights* which the inmate

4

would have had if confined in an appropriate institution of the sending state." R.I. Gen. Laws § 13-11-2, Art. IV(e) (emphasis added).

Mr. Petaway points to this provision of the Compact as support for his allegation that in Connecticut he had a "legal right" not to be tested for HIV without his consent, which was violated when he was tested for HIV without his consent upon his intake at the ACI. The Court disagrees with Mr. Petaway's contention that he had a "legal right" to refuse HIV testing at the ACI by virtue of a "legal right" to refuse consent to the same testing when he was incarcerated in a Connecticut correctional facility. Mr. Petaway did not have that "legal right" as a Connecticut prisoner; the Connecticut statute Mr. Petaway relies on for that assertion contains two exclusions for facilities operated by the Department of Corrections. Connecticut General Statutes § 19a-582, which discusses the law requiring general consent for HIV-related testing, includes the following:

> (d) the provisions of this section shall not apply to the performance of an HIV-related test:
>
> \*\*\*
>
> (6) In facilities operated by the Department of Correction if the facility physician determines that testing is needed for diagnostic purposes, to determine the need for treatment or medical care specific to an HIV-related illness, including prophylactic treatment of HIV infection to prevent further progression of disease, provided no reasonable alternative exists that will achieve the same goal;
>
> (7) In facilities operated by the Department of Correction if the facility physician and chief administrator of the facility determine that the behavior of the inmate poses a significant risk of transmission to another inmate or has resulted in a significant exposure of another inmate of the facility and no reasonable alternative exists that will achieve the same goal. No involuntary testing shall take place pursuant to subdivisions (6) and (7) of this subsection until reasonable effort has been made to secure informed consent. When testing without consent takes place pursuant to subdivisions (6) and (7) of this subsection, the counseling referrals and notification of test results described in subsection (c) of this section shall, nonetheless be provided[.]

C.G.S.A. § 19a-582(d)(6) and (7). These exceptions make clear that inmates in facilities

operated by the Connecticut Department of Corrections have no absolute statutory legal right to refuse HIV testing. Mr. Petaway could be tested in Connecticut without consent under certain circumstances just as he would in Rhode Island. He did not have a legal right to refuse to be tested for HIV in Connecticut without his consent, and therefore his argument that the Compact's requirement affording inmates the same "legal rights" in the receiving state, Rhode Island, as they enjoy in the sending state is misplaced here.

In addition to the Connecticut state statute, Mr. Petaway points to Connecticut Department of Corrections Administrative Directive Number 8.11 that states in part: "[u]nless otherwise stated in accordance with Section 9 of this Directive, HIV testing shall be performed with the informed consent of the inmate tested. Informed consent shall be obtained without undue inducement, compulsion, fraud, deceit, duress, or other forms of constraint or coercion." While this directive does discuss informed consent, it does not provide a legal right to refuse HIV testing. Moreover, Section 9 referenced provides for various situations where the inmate *may be tested for HIV without his consent* (e.g., the Department of Corrections director determines that the inmate poses a significant risk of transmission to others; the director determines that testing is needed for diagnostic purposes).[5]

The Court finds that the policies and procedures contained in the Connecticut Department of Corrections Administrative Directive Mr. Petaway relies on do not in this instance establish a prisoner's "legal rights" for purposes of the Compact that must be recognized at the receiving institution. Therefore, because the neither Connecticut statute nor Administrative Directives establish an absolute legal right to refuse HIV testing, Mr. Petaway's rights under the Compact or the Constitution were not violated when ACI staff tested him for HIV without his consent in

---

[5] This is similar to the exception set forth in C.G.S.A. § 19a-582(d)(7) discussed earlier in this Order.

accordance with Rhode Island law and the ACI policy.[6]

The Court finds that Mr. Petaway's claims against these Defendants do not demonstrate entitlement to any relief and therefore must fail when reviewed pursuant to Rule 12(b)(6). Therefore, this Court GRANTS Mr. Petaway's Motion to Strike (ECF No. 50); GRANTS Defendants Joseph DiNitto, Ashbel T. Wall, and Michael Fine's Motion to Dismiss (ECF No. 41); DENIES Mr. Petaway's Motion for Summary Judgment (ECF No. 33) and DENIES Mr. Petaway's Motion to Declare Rhode Island General Laws section 42-56-37(a) unconstitutional as it is applied to him. (ECF No. 36.) The case is therefore DISMISSED in its entirety, each side bearing its own costs.

IT IS SO ORDERED:

_____
John J. McConnell, Jr.
United States District Judge

June 14, 2012

---

[6] If the Court, however, were to find that a sending state's *policies and procedures* established absolute "legal rights" under the Compact that the receiving state was required to follow, nothing short of administrative chaos would ensue. Receiving states would have to apply to out-of-state inmates all of the sending state's policies and procedures, while in-state inmates would be governed by the ACI's policies and procedures. This would lead to different polices for out-of-state inmates on such matters as pharmacy services, classification, and security operations. The Compact's provision concerning preservation of "legal rights" does not, because it cannot, encompass all of the sending state's policies and procedures.